UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x 14 Civ. 6413 (JG)(JO)
STEPHEN WALKER,

                      Plaintiff,

                                                                         AMENDED COMPLAINT

   -against-

                                                                         JURY DEMAND

THE CITY OF NEW YORK, DETECTIVE
JOSHUA WINTERS (Shield # 4119) (Tax # 945106),
DETECTIVE THOMAS TUSCANO (Shield # 2841)
(Tax # 933420), DETECTIVE NICHOLAS GRENIER
(Shield # 2006) (Tax # 932744), DETECTIVE
RICHARD SCHNEIDER (Shield # 3213) (Tax # 931978)
and DETECTIVE KRISTOPHER ANSELMO
(Shield # 2535) (Tax # 942957),

                      Defendants.
------------------------------------------------------------------------x

Stephen Walker (hereinafter "plaintiff"), by his attorney(s) the Law Offices of Wale Mosaku, P.C., complaining of the defendants The City of New York, Detective Joshua Winters (Shield # 4119) (Tax # 945106), Detective Thomas Tuscano (Shield # 2841) (Tax # 933420), Detective Nicholas Grenier (Shield # 2006) (Tax # 932744), Detective Richard Schneider (Shield # 3213) (Tax # 931978) and Detective Kristopher Anselmo (Shield # 2535) (Tax # 942957) (hereinafter collectively referred to as "the defendants"), alleges as follows:

## NATURE OF THE ACTION

1.       This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. § 1983 [and §1985], [and arising under the law and statutes of the State of New York].

## JURISDICTION

2.       The jurisdiction of this Court is invoked pursuant to 42 U.S.C. Section 1983, 28 U.S.C. Section 1343, 28 U.S.C. Section 1331, and

under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

3. As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

SATISFACTION OF THE PROCEDURAL PREREQUISITES FOR SUIT

4. All requirements precedent to the filing of this action have been complied with.

5. On November 6, 2013, within ninety days after the claim(s) alleged in this complaint arose, a written notice of claim, sworn to by the plaintiff and/or his representative, was served upon the defendant City of New York by personal delivery of the notice in duplicate, to the person designated by law as one to whom a summons issued against such party may be delivered in an action in the applicable Courts. Plaintiff Stephen Walker's claim was assigned Claim No. 2013I028653.

6. At least thirty days have elapsed since the service of the above-mentioned notice of claim, and adjustment or payment of the claim has been neglected or refused.

7. This action, pursuant to New York State and City Law, has been commenced within one year and ninety days after the happening of the event that forms the subject of this action.

THE PARTIES

8. Plaintiff is a citizen of the United States. Plaintiff is an African-American male of full age.

9. On the date of the event that forms the subject of the plaintiff's complaint, specifically October 30, 2013, the defendants Detective Joshua Winters (Shield # 4119) (Tax # 945106), Detective Thomas Tuscano (Shield # 2841) (Tax # 933420), Detective Nicholas Grenier (Shield # 2006) (Tax # 932744), Detective Richard Schneider (Shield # 3213) (Tax # 931978) and Detective Kristopher Anselmo (Shield #

|   |   |
|---|---|
|   | 2535) (Tax # 942957) (hereinafter collectively referred to as "the defendants") were, and upon information and well-founded belief, still are law enforcement officers employed by the Police Department of the City of New York ("NYPD"). |
| 10. | On the date of the event that forms the subject of the plaintiff's complaint, specifically October 30, 2013, the defendant officers were acting under the color of their official capacity and their acts were performed under color of the statutes and ordinances of the City of New York and/or the State of New York. |
| 11. | The defendant officers were the servants, agents, and employees of their co-defendant, the City of New York, so that their acts are imputed to the City of New York and the NYPD. |
| 12. | On the date of the event that forms the subject of the plaintiff's complaint, specifically October 30, 2013, the defendant City of New York was a municipal corporation duly organized and existing under the laws of the State of New York, and was the employer of the defendant officers through its Police Department, specifically the NYPD, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or direction of the City of New York. |
| 13. | Plaintiff sues all defendants in their individual and official capacities. |

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

|   |   |
|---|---|
| 14. | On or about October 30, 2013, at approximately 07:30 a.m., inside of the plaintiff's residence described as 759 East 105 Street, #2B, Brooklyn, New York 11236 (hereinafter "subject premises"), the plaintiff was illegally and unlawfully arrested by defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo. |
| 15. | That prior to said arrest, the defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider |

and Detective Kristopher Anselmo had knocked on the door of the subject premises.

16. That upon hearing the knocking on her front door, the plaintiff's wife, namely Andrena Clark, went to the front door in order to find out who was at the door.

17. That when Ms. Clark arrived at the door, she observed the defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo (who were attired in plain clothes) through the peephole of said door.

18. That Ms. Clark asked who they were, and defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo identified themselves as police officers.

19. That when Ms. Clark asked what they wanted, defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo told Ms. Clark that they wanted to speak to her.

20. That Ms. Clark opened the front door and engaged defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo in conversation, without permitting them to enter into the subject premises.

21. That after Ms. Clark opened the front door, defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo asked if Ms. Clark lived at the subject premises with anyone, and Ms. Clark responded that she lived at the subject premises with her husband, the plaintiff Stephen Walker.

22. That defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo asked Ms. Clark if the plaintiff was within the

subject premises at that time, and Ms. Clark responded that he was in bed at that time.

23. That defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo then informed Ms. Clark that they had a warrant for the arrest of the plaintiff, and as such wanted to speak with him.

24. In response, Ms. Clark told defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo that she would go to inform the plaintiff of what she had been told.

25. At the time Ms. Clark went to get the plaintiff, she tried to shut the front door to the subject premises behind her, but was prevented from doing so by one of the defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo, who placed his foot in such a manner as to prevent Ms. Clark from shutting the door, and telling her "*no, I'll keep my foot jammed here*".

26. That Ms. Clark then went to the bedroom to inform the plaintiff about what she had been told by Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo.

27. That after being told that defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo had a warrant for his arrest, the plaintiff got up from his bed, in order to ascertain precisely what was going on.

28. That at that juncture, the plaintiff observed defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo within the subject premises, at the door to his bedroom.

29. Neither the plaintiff nor his wife had given defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo permission to enter into the subject premises.

30. At that juncture, defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo informed the plaintiff directly that they had a warrant for his arrest, and told him that he had to go with them to a police precinct.

31. As such, the plaintiff had no choice but to comply with the instructions of defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo, and was thus compelled to leave the subject premises with said defendant officers.

32. The plaintiff was taken out of the subject premises by defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo, and taken into a vehicle, within which he was placed in handcuffs.

33. While inside of the vehicle, the plaintiff asked to see the arrest warrant, but at that juncture, was told by one of defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo that in fact, they had no warrant authorizing his arrest, but that he was just wanted for questioning in connection with an investigation that was being conducted by defendant Detective Joshua Winters.

34. That prior to the plaintiff's arrest Detective Joshua Winters had prepared and issued an investigation card ("I-card") pursuant to which he had sought the arrest of the plaintiff by any member of the NYPD that came into contact with the plaintiff.

35. That said I-card was not an arrest warrant that was duly issued by a court of competent jurisdiction, after having been presented with sufficient evidence that justified the arrest of the plaintiff.

36. That the defendant officers Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo were fully aware that the I-card was not an arrest warrant, but nevertheless unlawfully arrested the plaintiff within his residence on October 30, 2013, solely on the basis of said I-card.

37. That upon arrival at the 77th precinct the plaintiff was interrogated by Detective Joshua Winters.

38. That during said interrogation, Detective Joshua Winters accused the plaintiff of perpetrating a robbery on September 30, 2013.

39. That the plaintiff denied perpetrating any robbery at any time, much less on September 30, 2013.

40. That Detective Joshua Winters told the plaintiff that following the robbery incident of September 30, 2013, the victim had picked his photograph out of a book as the perpetrator of the crime.

41. That Detective Joshua Winters told the plaintiff that he was going to have the victim come to the precinct, in order to see if said victim could further identify the plaintiff in a line up procedure.

42. That Detective Joshua Winters subsequently told the plaintiff that he had spoken with the victim, who had informed him that she would come to the precinct by 01:00 p.m. that day.

43. That Detective Joshua Winters told the plaintiff that if the victim did not come to the precinct by 01:00 p.m. that day, he would release the plaintiff from custody.

44. After 01:00 p.m., the plaintiff asked Detective Joshua Winters if he could be released, since Detective Joshua Winters had earlier told him that he would be released if the victim did not come to the precinct by 01:00 p.m.

45. That Detective Joshua Winters told the plaintiff that he was still trying to get the victim to come to the precinct, but that the victim was no longer answering her phone, and that he would talk to his superiors to determine what to do.

46. That at approximately 04:00 p.m., the plaintiff was released without charge from the 77th precinct by defendant Detective Joshua Winters.

47. At the time of his release, defendant Detective Joshua Winters informed the plaintiff that he could be re-arrested if he or his colleagues were able to get in touch with the victim.

48. That the day after he was released from custody, the plaintiff called Detective Joshua Winters, in order to determine if he was going to arrested again.

49. That at that time Detective Joshua Winters informed the plaintiff that the matter was "*done*", and that he (Detective Joshua Winters) was not pursuing it anymore, because the victim had not shown up to the precinct.

50. That the fact that the defendant Detective Joshua Winters released the plaintiff from custody after he (Detective Joshua Winters) was purportedly unsuccessful in having the victim come to the 77th precinct in order to determine if she could pick out the plaintiff in a line-up procedure, confirms that there was absolutely no probable cause for the arrest, detention and imprisonment of the plaintiff on October 30, 2013.

51. That if the defendant Detective Joshua Winters had reasonably believed that the victim purportedly picking out the plaintiff as a perpetrator in a prior photo array procedure provided justification for the arrest of the plaintiff, he would have charged the plaintiff with said crime and sought his prosecution, based solely on the victim's purported prior identification of the plaintiff in the photo array procedure.

### CAUSE OF ACTION: UNLAWFUL ENTRY PURSUANT TO 42 U.S.C § 1983

52. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 51 of this complaint as though fully set forth herein.

53. The defendants Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo unlawfully entered into the plaintiff's residence, without permission or probable cause to do so.

54. The foregoing unlawful entry into the plaintiff's home and abode violated the plaintiff's constitutional right to privacy, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

55. As a consequence of said defendants Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo's actions, the plaintiff suffered humiliation, mental anguish, depression, and his constitutional rights were violated.

56. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be determined at trial, against the defendants Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo, individually and severally.

### CAUSE(S) OF ACTION: FALSE ARREST AND FALSE IMPRISONMENT PURSUANT TO NEW YORK STATE LAW AND 42 U.S.C § 1983

57. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 56 of this complaint as though fully set forth herein.

58. The arrest, detention and imprisonment of plaintiff were without just or probable cause and without any warrant or legal process directing or authorizing the plaintiff's arrest or subsequent detention.

59. As a result of plaintiff's false arrest and imprisonment, he has been caused to suffer humiliation, great mental and physical anguish, embarrassment and scorn among those who know him, was prevented from attending to his necessary affairs, and has been caused to incur legal expenses, and has been otherwise damaged in his character and reputation.

60. Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

61. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City is vicariously liable for the defendant officers acts as described above.

62. This action falls within one or more of the exceptions of the New York State Civil Practice Law and Rules §1602.

### CAUSE(S) OF ACTION AGAINST EACH DEFENDANT OFFICER: FAILURE TO INTERVENE PURSUANT TO 42 U.S.C § 1983

63. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 62 of this complaint as though fully set forth herein.

64. Each and every individual defendant had an affirmative duty to intervene on the plaintiff's behalf to prevent the violation to his constitutional rights, as more fully set forth above.

65. The individual defendants failed to intervene on the plaintiff's behalf to prevent the violation of his constitutional rights, despite having had a realistic and reasonable opportunity to do so.

66. As a consequence of said defendants' actions, plaintiff suffered loss of liberty, humiliation, mental anguish, depression, and his constitutional rights were violated. Plaintiff hereby demands compensatory damages and punitive damages, in the amount of to be

determined at trial, against each of the defendants, individually and severally.

## CAUSE OF ACTION AGAINST THE DEFENDANT CITY OF NEW YORK: MUNICIPAL LIABILITY UNDER 42 U.S.C § 1983

67. By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 66 of this complaint as though fully set forth herein.

68. The acts complained of were carried out by the individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

69. The defendant officers acted under color of law, in their official capacity, and their acts were performed pursuant to the customs, policies, usages, practices, procedures and rules of the City of New York and its police department.

70. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and its police department include, but are not limited to the following unconstitutional practice(s): Causing the arrest of members of the public who are subjects of "I-Card(s)" unlawfully issued by Detectives employed by the NYPD.

71. That an I-card was (and is) an illegal and unconstitutional departmental tool utilized by the NYPD, wherein an investigating detective (such as Detective Joshua Winters) who sought (and seeks) to question a member of the public (such as the plaintiff) about an incident, rather than seeking an arrest warrant from a court of competent jurisdiction, prepares (and prepares) said I-card wherein the member of the public (such as the plaintiff) was (and is) identified as a person being sought, and thereafter caused (and causes) same to be dispersed and disseminated within the NYPD.

72. That the intent and practical effect of said I-card was and is to serve as a court issued arrest warrant.

73. That any member of the NYPD who became (and becomes) aware of said I-card (such as the defendants Detective Thomas Tuscano, Detective Nicholas Grenier, Detective Richard Schneider and Detective Kristopher Anselmo) was (and is) trained to seek, arrest and detain the subject of the I-card (in this case the plaintiff), and thereafter present the subject of the I-card to the detective who issued the I-card (in this case Detective Joshua Winters).

74. The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, constituted a deliberate indifference to the safety, well-being and constitutional rights of all members of the public, including but not limited to the plaintiff; were the proximate cause of, and moving force behind, the constitutional violations suffered by the plaintiff as alleged herein, and deprived plaintiff of the following rights, privileges and immunities secured to him by the Constitution of the United States:
    a) The right to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States.
    b) The right of the plaintiff not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured to him by the Fifth and Fourteenth Amendments to the Constitution of the United States.

75. The defendant officers were the actual agents of the defendant City of New York and were following the customs, practices, ordinances and/or regulations of the City of New York when they violated the plaintiff's constitutional and civil rights as set forth above, and the City of New York is therefore responsible for their acts, and liable to the plaintiff for the damages he suffered.

76. The actual principal/agent relationship between defendant City and the defendant officers was created by the fact they were employees of defendant City, and the City had the right to, and it did indeed

regulate and control the activities and conduct of the defendant officers.

WHEREFORE, plaintiff respectfully prays judgment as follows:

1. For compensatory damages against all defendants in an amount to be proven at trial;

2. For exemplary and punitive damages against all defendants in an amount to be proven at trial;

3. For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

4. For such other and further relief as the court deems proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
May 26, 2015

LAW OFFICES OF WALE MOSAKU, P.C.

By:  /s/

Wale Mosaku (AM5872)
Attorney for the Plaintiff
25 Bond Street, 3rd Floor
Brooklyn, N.Y. 11201
(718) 243-0994

TO:

Okwede Okoh, Esq.
Assistant Corporation Counsel
New York City Law Department
Attorney(s) for Defendant
City of New York
100 Church Street
New York, N.Y. 10007
(212) 356-3271

Detective Joshua Winters (Shield # 4119) (Tax # 945106)
Defendant *pro se*
77th Precinct
127 Utica Avenue
Brooklyn, NY 11213

Detective Thomas Tuscano (Shield # 2841) (Tax # 933420)
Defendant *pro se*
Brooklyn North Warrant Squad
1 Police Plaza, Room 1100
New York, NY 10038

Detective Nicholas Grenier (Shield # 2006) (Tax # 932744)
Defendant *pro se*
Brooklyn North Warrant Squad
1 Police Plaza, Room 1100
New York, NY 10038

Detective Richard Schneider (Shield # 3213) (Tax # 931978)
Defendant *pro se*
Hate Crimes Task Force
7th Precinct
19½ Pitt Street
New York, NY 10002

Detective Kristopher Anselmo (Shield # 2535) (Tax # 942957)
Defendant *pro se*
Special Investigations
1 Police Plaza, 11th Floor
New York, NY 10038

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK: 14 Civ. 6413 (JG)(JO)
_____
STEPHEN WALKER,


                                                Plaintiff,

            -against-

THE CITY OF NEW YORK, DETECTIVE
JOSHUA WINTERS (Shield # 4119) (Tax # 945106),
DETECTIVE THOMAS TUSCANO (Shield # 2841)
(Tax # 933420), DETECTIVE NICHOLAS GRENIER
(Shield # 2006) (Tax # 932744), DETECTIVE
RICHARD SCHNEIDER (Shield # 3213) (Tax # 931978)
and DETECTIVE KRISTOPHER ANSELMO
(Shield # 2535) (Tax # 942957),

                                                Defendants.
_____

                      AMENDED COMPLAINT
_____

               LAW OFFICES OF WALE MOSAKU, P.C.
                   Attorney(s) for Plaintiff
                   25 Bond Street, 3rd Floor
                    Brooklyn, New York 11201
                        (718) 243-0994
_____
```

**To:**                                  Service of a copy of the within
                                         is hereby admitted.

                                         Dated:................ 201_

**Attorney(s) for Defendants**

_____